IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF CONNECTICUT

```
-------------------------------------------------------x
                                        :
ESTATEE OF RUSSEL MECHLING              :
                    Plaintiff,          :            3:23-CV-00025 (VAB)
                                        :
v.                                      :
                                        :
U.S. BANK NATIONAL ASSOCIATION,         :
FINANCIAL CREDIT INVESTMENT             :
III SPV-A (CAYMAN), L.P.,               :            DATE: JULY 26, 2024
                    Defendants.         :
                                        :
-------------------------------------------------------x
```

RULING ON DEFENDANT'S MOTION TO COMPEL

This case is about two stranger-owned life insurance ("STOLI") policies.  Plaintiff Estate of Russel Mechling and Defendant Financial Credit Investment III SPV-A (Cayman), L.P. both believe they are entitled to the STOLI policy proceeds.  For nearly eighteen months, the parties have been embroiled in discovery disputes that are constant and ever-evolving.  (*See* Doc. No. 35 (initial referral).)  The abject failure of counsels' ability to compromise, which has regularly led to court involvement, has, at times, caused this Court to question whether the parties are  negotiating in good faith.  (*See, e.g.,* Doc. No. 198 (Tr. 5/31/24) at 30:1–21.)  Fact discovery closes on July 26, 2024.

Before the Court is the defendant's Motion to Compel (Doc. No. 206).  The Court must decide whether certain information, documents and communications between the plaintiff and its current counsel, Cozen O'Connor—that were exchanged *before* the law firm was retained—are relevant.  The Court concludes they are not.  For the following reasons, the defendant's Motion to Compel is **DENIED**.

1

I.     **Background**

The Court presumes familiarity with the allegations, which are summarized clearly in the decision denying the defendant's Motions to Dismiss.  (*See* Doc. No. 156 (denying Doc. Nos. 111 & 114).)

This case was filed on January 6, 2023.  (Doc. No. 1.)  Within two weeks—and months before discovery formally started under Rule 26(d)—the plaintiff filed an "emergency" motion to compel (Doc. No. 10) that the Court (Bolden, J.) determined was not in fact an emergency (Doc. No. 19).  When it was time for the parties to file a Joint Rule 26(f) Report in March 2023, the parties could not agree to deadlines for a Scheduling Order, (*see* Doc. No. 31), and ultimately required the Court's involvement just to issue a Scheduling Order (*see* Doc. Nos. 40-44).  Since then, the parties have brought a discovery dispute before this Court on a near-monthly basis.

On May 28, 2024, the parties filed the current discovery dispute motion, which raises the question of whether they should be required to produce pre-retention communications with counsel and whether and to what extent the parties must produce privilege logs.  On May 31, 2024, the Court held a hearing during which the parties appeared to agree about the requirements for producing a privilege log and agreed to meet and confer about the relevance of the requested documents.  The Court cautioned that the relevance of pre-retention documents and communications was "questionable," and explained that neither side should threaten the other with a motion to compel because "both sides here have vulnerability."  (Doc. No. 198 at 32:9–24.)  The Court ordered the parties to "**meaningfully** meet and confer" and file a status report on June 28, 2024.  (Doc. No. 197 (emphasis in original).)

On June 24, 2024, the parties filed a status report indicating that, not only had they failed to make progress on the outstanding issues, they had backtracked from their agreement (facilitated

by this Court) about the privilege log. (*See* Doc. No. 199.) The Court ordered briefing to be completed by July 9, and explicitly stated: "The Court puts the parties on notice that it will not order production unless the movant first establishes the information sought is relevant. *See Huseby, LLC v. Bailey*, No. 3:20-CV-00167 (JBA), 2021 WL 3206776, at *6 (D. Conn. July 29, 2021)." (Doc. No. 200.) The parties thereafter filed notices, requesting an extension in the name of compromise, (*see* Doc. Nos. 201 & 204), which the Court granted with the caveat that the parties file briefing on July 9 if they failed to reach agreement (*see* Doc. No. 205). Sure enough, this briefing followed.

## II.   <u>Legal Standard</u>

"[T]he scope of discovery is broad." *McCarroll v. Nardozzi*, No. 3:96CV00124 (AVC), 2004 WL 7333640, at *2 (D. Conn. Oct. 13, 2004). The "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." FED. R. CIV. P. 26(b)(1). Considerations must include "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* "Information within this scope of discovery need not be admissible in evidence to be discoverable." *Id.* "The touchstone of Fed. R. Civ. P. 26(b)(1) is relevance[.]" *Compudyne Corp. v. Shane*, 244 F.R.D. 282, 283 (S.D.N.Y. 2007).

"When a party files a motion to compel, it bears the initial burden to show the relevance of the information it seeks." *Huseby*, 2021 WL 3206776, at *6. After this burden has been met, the "party resisting discovery [then] bears the burden of showing why discovery should be denied." *Cole v. Towers Perrin Forster & Crosby*, 256 F.R.D. 79, 80 (D. Conn. 2009). "Put differently,

the moving party must make 'a *prima facie* showing of relevance,' after which 'it is up to the responding party to justify curtailing discovery.'" *Huseby*, 2021 WL 3206776, at *6 (quoting *Shore-Long Island Jewish Health Sys., Inc. v. MultiPlan, Inc.*, 325 F.R.D. 36, 48 (E.D.N.Y. 2018)).

"All '[m]otions relative to discovery,' including motions to compel, 'are addressed to the discretion of the [district] court.'" *Mercer v. Rovella*, No. 3:16-CV-329 (CSH), 2022 WL 1514918, at *3 (D. Conn. May 12, 2022) (quoting *Soobzokov v. CBS*, 642 F.2d 28, 30 (2d Cir. 1981)). "Rule 26 vests the trial judge with broad discretion to tailor discovery narrowly and to dictate the sequence of discovery." *Id.* (quoting *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998)) (internal quotation marks omitted). *See also Dauphinais v. Cunningham*, 395 F. App'x 745, 746-47 (2d Cir. 2010) ("[T]he federal rules give district courts broad discretion to manage the manner in which discovery proceeds, and we review discovery rulings for abuse of discretion." (citations and internal quotation marks omitted)).

## III.   <u>Analysis</u>

The defendant seeks discovery responsive to one interrogatory and one request for production:

- <u>Interrogatory No. 18</u>: "State the dates when You first communicated with counsel concerning the actual or potential representation of You in, *inter alia*, this Action, the Ohio Action, and/or the Massachusetts Action, and identify the name and employer of the person with whom You communicated." (Doc. No. 206-2, Ex. A at 5.)

- <u>Request for Production No. 12</u>: "All Documents and Communications between Cozen and any family member, friend, representative or acquaintance of the Insured prior to the time Cozen was retained to represent Ellen Ulmer in her capacity as Executor of the Estate." (Doc. No. 206-3, Ex. B at 3.)

The defendant argues that responsive documents are relevant to the first count: whether the plaintiff is equitably entitled to the subject insurance policies pursuant to § 631.07(4) of the Wisconsin Statutes. (Doc. No. 206-1 at 7.)

First, the defendant argues that Rule 26 is a broad discovery standard and that the discovery requests concern the following topics, which it is "entitled to explore":

> (a) whether any family member was even aware of the Mechling Policies at or before the time of Mr. Mechling's passing; (b) whether any such individual made any comment bearing on the propriety of (or expressing skepticism about) either Mr. Mechling's procurement of the Policies or a potential lawsuit by his Estate; (c) who initiated or participated in the pre-retention conversations about potentially bringing suit; (d) whether Mr. Mechling or any family member was harmed by the purchase, sale, and profit after the Policies' procurement; and (e) the extent to which anyone involved believed that the Estate had (or lacked) a valid claim to, or need for, these insurance proceeds (for which Mr. Mechling and his heirs paid no premiums, based on the complaint's own allegations).

(*Id.* at 8.)  Second, the defendant argues that the responsive documents are relevant to "the extent to which[ ] the Estate was enticed to bring this action," including through a contingency fee agreement.  (*Id.* at 8–9.)

The plaintiff disagrees.  After summarizing Seventh Circuit jurisprudence, principles of statutory construction, plain language, common law, and legislative history on § 631.07(4)'s definition of "equitable entitlement," the plaintiff argues that "the only considerations relevant to whether, under Section 631.07(4), the Estate is equitably entitled to recover the policies' proceeds from FCI are (i) whether the policies were procured without a valid insurable interest, and (ii) whether FCI received the proceeds."  (Doc. No. 207 at 12.)  Alternatively, the plaintiff argues that communications between the Mechling family and Cozen O'Connor—including letters from the law firm and fee agreements—are not responsive to the defendant's purportedly relevant topics.  (*See id.* at 12.)  Specifically, the plaintiff argues, "Those considerations have nothing to do with whether the Mechling policies were STOLI, they have nothing to do with whether Wisconsin law treats STOLI policies as injurious to Wisconsin's public policy, and they have nothing to do with whether Mr. Mechling was the subject of an illegal human-life wager."  (*Id.* at 12–13.)

Section 631.07(1) of the Wisconsin Statutes states: "No insurer may knowingly issue a policy to a person without an insurable interest in the subject of the insurance." WIS. STAT. § 631.07(1).  "Interest of the insured," (i.e., insurable interest), is defined as "the interest of the named insured and of any other person with whom the named insured holds the insured property in joint tenancy or as marital property."  WIS. STAT. § 631.02.  Where a policy holder lacks an insurable interest, the insurance policy is still valid but a court "may order the proceeds to be paid to someone other than the person to whom the policy is designated to be payable, who is equitably entitled thereto. . . ."  WIS. STAT. § 631.07(4).

The statute does not specify how to prove equitable entitlement.  (*See* Doc. No. 207 at 11.)  In a case concerning § 631.07, the Wisconsin appellate court ruled that "[p]ayment based on equitable entitlement is only an option available if justice requires payment to someone other than a designated payee."  *Martin v. Tower Ins. Co., Inc.*, 119 Wis. 2d 48, 51 (Wis. Ct. App. 1984).  A trial court must exercise its discretion to weigh "the factors or equities that affect the judgment."  *Disrud v. Arnold*, 167 Wis. 2d 177, 185 (Wis. Ct. App. 1992).

It is well-established that the transfer "of a life insurance [policy] to one not having an insurable interest, is not of itself invalid, but that if made for cloaking an agreement whereby the assignee is to engage in a gamble upon the life of the insured, it is invalid."  *Albrent v. Spencer*, 275 Wis. 127, 136 (1957).  The Wisconsin Supreme Court in *Albrent* explained, "It offends one's sense of justice that a creditor should realize more out of the proceeds of the policy than the principal and interest due on the loan for which the policy was pledged plus any expenditure of the creditor for the premiums necessary to protect his security."  *Id.* at 138.

In other words, justice and equity requires the court to reallocate such proceeds when the defendant has gambled on the insured's life.  The intent of the person who does not have an insured

interest is therefore relevant to establishing whether the transfer violates public policy. *See id.* at 136–37.  As the appellate court later explained in *Disrud v. Arnold*, relevant factors also include the purpose of the policy, the parties' interest and other circumstances *at the time of the loss*, other provisions in the policy, and whether one party might enjoy a windfall.  *See Disrud*, 167 Wis. 2d at 185–86.

The defendant's discovery requests are not relevant to these factors.

First, because Interrogatory 18 seeks dates when "You" first communicated with counsel about this action, the Court presumes it concerns the time period leading up to *the Estate's* retention of Cozen O'Connor.  Oceanus procured the insurance policies in 2007, thirteen years before the Estate was established and while Mr. Mechling was alive.  Therefore, the information sought could not possibly be relevant to establishing the Estate's equitable entitlement to the insurance policies unless Cozen O'Connor contacted Mr. Mechling or his family, friends, representatives or acquaintances about Oceanus' procurement of the policy before Mr. Mechling's death.  (*See* Doc. No. 106 (Second Am. Compl.) ¶ 24.)  If Cozen O'Connor did make such contact before Mr. Mechling's death, it shall specify the date of the contact and with whom the firm communicated.

Second, Request for Production 12 seeks documents and communications between Cozen O'Connor and Mr. Mechling's family members, friends, representatives, or acquaintances.  In choosing not to provide a topic, scope, timeframe, or other limiting parameters, the defendant has failed to establish why documents or communications between the law firm and these individuals have anything to do with the plaintiff's equitable entitlement to the insurance policies.  For instance, responsive documents might concern the firm's holiday card.  Or responsive communications may relate to the weather or community events.  "Evidence is relevant if: (a) it

has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." FED. R. EVID. 401. Without a more specific request, the relevance standard simply cannot be satisfied. To the extent some documents responsive to the Request theoretically could be relevant, the failure to include a time frame, scope or topic leads the Court to conclude it is not proportional to the needs of the case. See FED. R. CIV. P. 26(b)(1). The defendant believes it is "entitled to explore" information like family members' knowledge or opinions about the insurance policy procurement, their opinions about the lawsuit, and the plaintiff's damages. Simply put, the defendant can ask these family members or other individuals directly through depositions or by requesting documents in their possession, rather than secondarily through soon-to-be-retained counsel's private conversations.

Because the Court finds the requested discovery is not relevant, the privilege log issue is moot. *See* Fed. R. Civ. P. 26(b)(5).

## IV.   <u>Conclusion</u>

For the above reasons, Defendant Financial Credit Investment III SPV-A (Cayman), L.P.'s Motion to Compel, (Doc. No. 206), is **DENIED**. Notwithstanding the denial, the Court ORDERS the following, which must be disclosed on or before **August 2, 2024**:

If Cozen O'Connor contacted Mr. Mechling or his family, friends, representatives or acquaintances about Oceanus' procurement of the policy before Mr. Mechling's death, the firm shall inform the defendant (a) the date(s) when such contact was made and (b) with whom the law firm communicated. Such information could lead to the discovery of individuals with knowledge of facts relevant to the Estate's alleged equitable entitlement.

If Cozen O'Connor did not contact Mr. Mechling or his family, friends, representatives or acquaintances about Oceanus' procurement of the policy before Mr. Mechling's death, it shall so state.

This is not a Recommended Ruling. This Ruling is reviewable pursuant to the "clearly erroneous" statutory standard of review. *See* 28 U.S.C. § 636(b)(1)(A); FED. R. CIV. P. 72(a); and D. CONN. L. CIV. R. 72.2. As such, it is an order of the Court unless reversed or modified by the district judge upon timely made objection.

Dated this 26th day of July 2024, at New Haven, Connecticut.

/s/ *Robert M. Spector*, U.S.M.J
Robert M. Spector
United States Magistrate Judge